## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| HANNA BRANSON,<br>    **Plaintiff** | )<br>)<br>) |
| **v.** | )<br>) |
| Officer SARAH L. HOWARD,<br>    in her individual and official capacities, | )<br>)<br>) |
| **and** | )<br>) |
| CITY OF LEAVENWORTH, Kansas,<br>    Defendants. | )<br>)<br>) |

**Case No.:**

**TRIAL BY JURY REQUESTED**

### COMPLAINT FOR DAMAGES

COMES NOW Plaintiff HANNA BRANSON, by and through counsel of record JAY P. VAN BLARICUM of BARNETT LAW OFFICE, LLC, and, for her Complaint for Damages against the above-named Defendants for violations of her guaranteed and protected federal constitutional rights, alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367; and venue is properly set in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391.

2.     The causes of action arise from factual allegations occurring in this judicial district.

3.     Each of the named Defendants is situated in this judicial district.

4.     Plaintiff **HANNA BRANSON** ("Plaintiff") resides in the City of Leavenworth, Leavenworth County, State of Kansas.

5.     The Plaintiff regarded the now-deceased, Terrier mix pet dogs named **GEORGIA PEACH** and **BOLT** as her sentient personalty and immediate family members.

6.     **CITY OF LEAVENWORTH** ("City") is a municipal corporation, organized

under the laws of the State of Kansas, including for purposes of liability under 42 U.S.C. § 1983. It operates the **CITY OF LEAVENWORTH POLICE DEPARTMENT** ("LPD"), the entity for which Defendant **SARAH L. HOWARD** worked during the complained-of incident.

7.      Defendant **SARAH L. HOWARD** ("Howard") is, and at all times was, a resident of the City of Leavenworth, and employee and/or agent of LPD and City, acting within the scope of her employment for purposes of state law, and under color of state law for purposes of federal law. She is being sued in her individual and official capacities.

8.      Under 42 U.S.C. § 1988, "(1) every person, (2) who, under the color of state law, (3) subjects or causes to be subjected, (4) any citizen of the US deprivation of any rights, privilege, or immunity secured by the constitution, (5) shall be liable to the person injured."

9.      Plaintiff's claim for attorney's fees and costs is authorized by, *inter alia*, 42 U.S.C. § 1988. No administrative claim filing or other pre-litigation requirements apply to their claims against Defendants under 42 U.S.C. § 1983.

10.     On March 20, 2025, the City was mailed via certified letter a *Notice of Claim* on behalf of Ms. Branson in full compliance with the notice requirements of K.S.A. 12-115b(d) and the Federal Tort Claims Act. More than sixty days have elapsed since the Plaintiff sent the notice of claim to the City.

11.     This court has personal jurisdiction over the Defendants.

## <u>GENERAL ALLEGATIONS</u>

12.     At all times relevant to this cause of action, Ms. Branson owned Georgia Peach and Bolt. Georgia Peach was a short female, light brown in color, with light brown eyes, a dark brown nose, and a white patch on her chest. Born in October of 2022, she had been Ms. Branson's companion and sentient friend since January 2023. Born in September of 2019, Bolt was male,

and a bit larger than Georgia Peach. Bolt was light brown color with a hint of red, a brown nose with a red outline, yellowish eyes, white front paws and a white patch on the back of his neck in the shape of a lightning bolt, hence Ms. Branson named him Bolt when she adopted him in November 2019.

13.     On or about September 10, 2024, Defendant Howard was employed as a law enforcement officer by Defendant City and on-duty and acting within the scope of her employment with Defendant City.

14.     Plaintiff Hanna Branson hereby brings this case against Defendant Sarah L. Howard, in her individual and official capacity as an empowered police officer of the City of Leavenworth, Kansas, for the unlawful seizure by killing and subsequent destruction of Georgia Peach and Bolt, Ms. Branson's beloved dogs and companion animals, in violations of her protected Fourth and Fourteenth Amendment rights, pursuant to and as authorized under 42 U.S.C. § 1983, and against Defendant City, Kansas, a municipal corporation and body politic, for its failures to properly and adequately train and supervise Defendant Howard as an empowered police officer and agent in its employ, pursuant to and under theories of municipal liability ("*Monell*" liability). Pursuant to the United Supreme Court's opinion in *Monnell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is subject to liability under § 1983 when the violation of the plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. Further, "[T]he decision not to take any action to alleviate [constitutional violations] constitutes a policy for purposes of § 1983 municipal liability." See *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).

15.     As pleaded and set forth in detail below, on or about September 10, 2024, at 5:53 p.m., Defendant Sarah L. Howard responded to a call from Leavenworth Police Department dispatch reporting two unconfined dogs who had allegedly bitten a person.

16.    At approximately 5:56 p.m., Officer Howard exited her patrol vehicle and opened the trunk to retrieve a catchpole. A few seconds later, she saw two dogs walking across the street and into an alleyway. The dogs' appearance indicated they were groomed, healthy weight, clean, and very clearly companion animals belonging to a caring person. The dogs had retreated into some brush in the alleyway close to their own home where they lived with Ms. Branson. Despite the dogs showing no aggression at any point in the video prior to the shooting, Defendant Howard radioed in, reported her location over her radio, and stated "the darker brown is aggressive, tried to approach me, haven't been able to catch either." Defendant Howard slowly followed the two dogs into the alley. At 5:57 p.m., Georgia Peach and Bolt emerged from the bushes, barked, and trotted in Officer Howard's direction. Officer Howard dropped her catch-pole, drew her weapon, said "stop!" and immediately, without waiting, fired four shots, two shots in each dog's head. At 5:58 p.m., both dogs lay dead.

17.    Only after killing Georgia Peach and Bolt did Defendant Howard investigate the dog bite report. In doing so, it became clear that the individual involved in the reported dog bite incident had received only a small scrape and what appeared to be a puncture wound from a single tooth, and did not require any medical attention. The investigation revealed the reporting party did not wish to press charges.

18.    Defendant Howard's warrantless seizure of Georgia Peach and Bolt was unnecessary, callous, and egregious as it was unwarranted by law and violative of Plaintiff Branson's most fundamental and guaranteed constitutional rights. At no time during the encounter between the two dogs and Defendant Howard did the dogs show any undue aggression towards Defendant Howard, only avoidance. The dogs jogged in the direction of the approaching officer, , displaying normal dog behavior, as *she* approached *them* with her weapon drawn.

19.    Plaintiff asserts Defendant Howard had no reasonable fear that Georgia Peach and

Bolt presented any threat of great bodily harm to her or anyone else. The initial report to police of a dog bite resulted in a minor puncture wound on the individual involved, and could not reasonably be considered "great bodily harm." Further, the smaller dogs could not have posed any threat of great bodily harm to the much larger and stronger Defendant Howard even if they had been so inclined. For example, in 2008, in *Viilo v Eyre*, 547 F.3d 707 (C.A.7 (Wis.), 2008) the 7th U.S. Circuit Court of Appeals concluded that "the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger, and the use of force is **unavoidable** (emphasis added)." During the initial encounter, Defendant Howard failed to make a good faith attempt at using her catchpole or any other non-lethal means of apprehension and simply watched when Georgia Peach and Bolt looked at her and casually trotted away to their own yard. Based on Defendant Howard's own encounter with the two dogs, it was reasonable to believe they were capable of being captured by non-lethal means, but none were attempted.

20.     As further pleaded and set forth in detail below, Defendant City bears municipal liability for its part and actions in Defendant Howard's unlawful seizure and killing of Georgia Peach and Bolt. Defendant City's training and supervision of Defendant Howard was so woefully inadequate that Defendant Howard, an allegedly trained and capable law enforcement officer entrusted with firearms and public safety, could not, or chose not to, even use any of the simple, non-lethal animal control devices, including those listed in City Code § 8-69, such as a catchpole, a tranquilizer gun, taser, pepper spray, baton, to capture an unconfined dog; tools regular animal control officers use every day to capture unconfined dogs. Moreover, based on information and belief, and actions made by Defendant Howard, it appears that the City engaged in no or almost no training, supervision, or discipline of its officers when it comes to animal capture, less lethal capture tactics and tools, or lethal force continuums.

21.     Further, based on statements made by Defendant Howard to Plaintiff, while

Defendant City had ordinances and procedures for the safe impoundment of lost or stray animals, it neither trained their officers on these procedures nor put in place any mechanism for implementing them. Ultimately, Georgia Peach and Bolt's death, and Defendant Howard's egregious violation of Plaintiff's protected Fourth and Fourteenth Amendment rights, were the direct result of Defendant City's failures to properly train, supervise, and discipline its officers and failures to maintain proper mechanisms for the completing of the most basic and common of municipal tasks of catching and impounding lost and stray dogs.

22.     Defendant Howard's killing of Georgia Peach and Bolt was effectuated without a warrant or judicial authorization.

23.     There was no urgency, emergency, or exigency necessitating Georgia Peach and Bolt's destruction, as Georgia Peach and Bolt were not posing any threat of great bodily harm to Defendant Howard or anyone else.

24.     Pursuant to Defendant City Code, § 8-2: "Officer shall mean city animal control officer or city police officer."

25.     Pursuant to Defendant City Code, § 8-67, Officers are to address and resolve lost and stray dogs as follows:

> "A dog or other animal found running at large or in violation of the articles within this chapter, situated within the corporate limits of the city, may be taken up by the officer or brought in by a member of the public and may be impounded at any facility with which the city manages or has contracted for animal sheltering services. The officer shall make a record of all dogs or other animals so impounded with their description, date of impoundment and rabies vaccination number if available. If, within four business days from the date any dog or other animal is impounded and the owner of such dog or animal shall appear and claim his or her dog or animal, said dog or animal may be released upon payment of the applicable impoundment fees as set forth by the city and/or the facility providing the sheltering services. All fees required by this section shall be payable to the city, and no animal shall be released until the animal's owner proves that the animal, if a dog or other animal, is currently immunized against rabies, is properly licensed pursuant to article V of this

chapter, and all impoundment and board fees have been paid in full to the city, unless some other arrangement is agreed to between the parties to accomplish this goal, such as a payment plan or a scheduled veterinarian appointment."

26.     Defendant City was clearly aware of the need for animal control and the proper resolution of issues involving lost and stray dogs, designating its law enforcement officers to fulfill that role (§8-2); designating a place and process for where and how to house animals at large (§8-67); and specifying a policy and mechanism for owners to reclaim lost dogs who had been impounded by the city (§8-67).

27.     The use of lethal force in animal control circumstances is addressed in Defendant City's Code §8-69 as follows: "The chief of police or his/her designate shall be authorized to use a tranquilizer gun, taser, pepper spray, baton, or other lethal force in the enforcement of this chapter. He/she shall be authorized to tranquilize/stun an animal which is impractical or impossible to catch or capture. In circumstances where the officer or another human being is in threat of great bodily harm from an animal, or an animal has been critically injured, lethal force maybe [*sic*] employed against the animal."

28.     Contrary to Defendant Howard's apparent unawareness or indifference of the fact that Defendant City enforced animal control, Defendant City did enforce animal control and, pursuant to Defendant City's city code, it was Defendant Howard herself, as a police officer of Defendant City dispatched to enforce it.

29.     Defendant Howard's actions indicated that she had not received, been given, or had "taken" any training regarding dogs, evaluating the condition of dogs, evaluating dog behavior, and/or basic animal control functions, including simply catching loose dogs using any of the non-lethal methods authorized in § 8-69.

30.     Defendant Howard's non-use of the catchpole, a tool she was clearly in possession

of, and inability to employ any non-lethal method of deescalating a stray dog encounter, displayed a clear and obvious lack of training regarding her job duties, City ordinances, and best and proper animal control practices.

31.    Upon information and belief and statements made by Defendant City officials after the shooting of Georgia Peach and Bolt, Defendant City had not previously provided any training to Defendant Howard on the safe, effective, and proper performance of her concurrent duties as a law enforcement officer and animal control officer under the City code.

32.    The fact that Defendant Howard immediately resorted to lethal force shows she was unaware or indifferent to what capacity she was working for the City, and evinces Defendant City's clear lack of training of its officers and employees and utter disregard for the rights of the citizens of Leavenworth and their pets and animals.

## CLAIMS FOR RELIEF

33.    The City is liable to Ms. Branson based on the following legal claims and doctrines, stated in the alternative under FRCP 8(d)(2), and based on direct and vicarious liability for pendent state claims (e.g., respondeat superior [imputing fault to City based on acts and omissions of Howard]). All allegations above are incorporated by reference and reasserted as to the claims below.

34.    **FIRST CLAIM (Sarah L. Howard)** - Violation of Federal Constitutional Guarantees (42 U.S.C. § 1983), as to Defendant Sarah L. Howard, whose actions were taken under color of law, violating clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by her. Howard unlawfully and unconstitutionally seized Ms. Branson's personalty, to wit, Georgia Peach and Bolt, in violation of the Fourth Amendment to the United States Constitution.

35.    Under 42 U.S.C. 1983, every person, who, under the color of state law, subjects or

causes to be subjected, any citizen of the US to deprivation of any rights, privilege, or immunity secured by the constitution, shall be liable to the person injured.

36.    As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

37.    As defined by the United States Supreme Court, a Fourth Amendment seizure of property occurs whenever there is "some meaningful interference with an individual's possessory interests in that property." See *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61-62 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

38.    As repeatedly recognized and well-established by the federal courts, the seizure of a family pet by killing him or her can give to a claim for an unlawful seizure of property in violation of the Fourth Amendment. See *Love v. Grashorn*, No. 23-1397, 2025 U.S. App. LEXIS 9515 (10th Cir. Apr. 22, 2025); *Mayfield v. Bethards*, 826 F.3d 1252, 2016 U.S. App. LEXIS 11096 (10th Cir. 2016); *Carroll v. County of Monroe*, 712 F.3d 649 (2nd Cir. 2013); *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006); *San Jose Charter of the Hell's Angels v. City of San Jose, California*, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.").

39.    Also well-established by the federal courts, warrantless searches and seizures are considered *per se unreasonable* unless they fall within a one of the few and "well-defined" exceptions to the warrant requirements. *United States v. Place*, 462 U.S. 696, 700-702 (1983); *Katz v. United States*, 389 U.S. 347, 357 (1967); *Mayfield v. Bethards*, 826 F.3d at 1256.

40.    On or about September 10, 2024, Plaintiff was the lawful owner of Georgia Peach and Bolt, her pets and companion animals, and Plaintiff had protected Fourth Amendment rights

in the dogs as her property and constitutional effects.

41.    On or about September 10, 2024, Defendant Sarah L. Howard, while acting under color of state law, meaningfully interfered with Plaintiff's protected possessory interests in her two dogs by shooting and killing them both.

42.    Defendants' killings of Georgia Peach and Bolt were effectuated in the absence of a lawfully issued warrant and/or without judicial authorization or exception, thereby rendering her actions presumptively *per se* unreasonable.

43.    Georgia Peach and Bolt, at no time on or about September 10, 2024, posed or presented any threat of great bodily harm to Defendant nor anyone else.

44.    Rather than resorting to shooting and killing Georgia Peach and Bolt, Defendant Howard could have and should have used a variety of non-lethal, every-day methods to capture the dogs.

45.    Based on the facts and circumstances of this matter, Defendant Howard is not entitled to any claim of qualified immunity. The availability of qualified immunity turns on the existence of an imminent danger to Defendant Howard. *Love v. Grashorn*, at 14-15. It is clearly well-established within this Circuit, as well as other circuits, that "an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution, when he shoots and kills an individual's family pet when that pet presented no danger and **when non-lethal methods of capture would have been successful**." *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3rd Cir. 2001) (emphasis added); see also *Mayfield v. Bethards*, 826 F.3d at 1256; *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994)); *Maldonado v. Fontanes*, 568 F.3d 263, (1st Cir. 2009).

46.    As a direct and proximate result of Defendant's conduct and action, Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to: infringements

and deprivations of her constitutional rights, including destruction of her two companion animals

and property; great fear for her liberty and security; pain of the mind as well as the body; mental

anguish and distress; anxiety; and injury to her faith in law enforcement.

47.    The acts of Defendants, as described herein, were intentional, wanton, malicious,

oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiff, thus

entitling her to an award of punitive damages against Defendant Howard.

48.    As a result of Defendant Howard's unlawful actions and infringements of her

protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore

entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Hanna Branson respectfully prays that this Court enter judgment

in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Sarah L. Howard, in her

individual and official capacities, and award Plaintiff Hanna Branson any and all compensatory

damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees,

expenses, costs, and any other such relief to which she is entitled and that this Court deems deems

just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

49.    **SECOND CLAIM (City of Leavenworth)** - Violation of Federal Constitutional

Guarantees (42 U.S.C. § 1983), as to City, based on defective training, resulting in the

unconstitutional Fourth Amendment seizure of Georgia Peach and Bolt by Defendant Howard.

50.    Plaintiff hereby incorporates the preceding paragraphs by reference and as if set

forth fully herein.

51.    As described herein, Defendant Sarah L. Howard, while acting under color of state

law in her capacity as a law enforcement officer for Defendant City of Leavenworth, Kansas,

deprived Plaintiff Hanna Branson of her rights, privileges, and immunities as secured by the

Constitution of the United States of America in the unlawful seizure of Georgia Peach and Bolt, Plaintiff's pets and companion animals, by shooting and killing them both.

52.     Defendant City's training program and disciplinary policies regarding its police and animal control operations was non-existent, inadequate, and/or failed to provide Defendant Howard and City employees with the necessary knowledge and skills to carry out their duties (including that they operated as animal control), and/or allowed them to routinely violate the rights of individuals without fear of repercussion or sanction, including but not limited to failures to train Defendant Howard on the proper use of a catchpole and the proper process and procedures for capturing and impounding animals. See *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 741 (10th Cir. 1993) (finding evidence "clearly sufficient to permit the jury reasonably to infer that Denver's failure to implement . . . recommended [periodic live 'shoot– don't shoot' range training] constituted deliberate indifference to the constitutional rights of Denver citizens").

53.     Defendant City knew that its police officers would routinely be in a position of responding to calls and reports of stray animals.

54.     By failing to properly train its officers and employees regarding these encounters, Defendant City acted with deliberate indifference to the fact that its failure to provide such training, supervision, and discipline would result in the unlawful killings and deaths of family pets and, thereby, result in deprivations of the constitutional rights of the citizenry, such as those suffered by Plaintiff. See *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989).

55.     As a direct and proximate consequence of the acts of Defendant City, Plaintiff has suffered and continues to suffer damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments and as protected by 42 U.S.C. § 1983.

56.     As the result of the actions of the individually-named Defendant Howard and

Defendant City, Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to: infringements and deprivations of her constitutional rights, including destruction of her two companion animals and property; great fear for her liberty and security; pain of the mind as well as the body; mental anguish and distress; anxiety; and injury to her faith in law enforcement.

57.     As a result of Defendant City's unlawful actions and infringements of her protected rights, Ms. Branson has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Hanna Branson respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant City, and award her any and all compensatory damages, attorneys' fees, expenses, costs; issue an order requiring prevention of future Constitutional violations; and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## PENDENT STATE CLAIMS

58.     **THIRD CLAIM – Conversion and/or Trespass to Chattels.** Defendants permanently deprived Plaintiff of her property, Bolt and Georgia Peach, without her consent, by killing both dogs.

59.     **FOURTH CLAIM – Outrage/Reckless Infliction of Emotional Distress.** Defendants' unjustified, summary destruction of Plaintiff's dogs constituted intentional or reckless conduct which was so extreme and outrageous as to be regarded as utterly atrocious or intolerable in a civilized society and which caused the Plaintiff extreme and severe mental distress.

60.     **FIFTH CLAIM – Negligence.** Defendants breached their duty of care to prevent foreseeable harm, which directly caused the destruction and death of Plaintiff's dogs, and caused

her significant monetary and emotional damage.

Ms. Branson reserves the right to amend this Complaint to raise additional, alternative claims for relief as discovery commences.

Respectfully submitted on this 18th day of June, 2025.

*/s/ Jay VanBlaricum*
Jay P. VanBlaricum, KS 21662
Barnett Law Office, LLC
P.O. Box 442193
Lawrence, KS 66044
Tel: (785) 727-9789

jay@barnettlawoffice.com